**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WILMER DIAZ,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-3359** |
| **SANGAM ELLICOTT CITY, LLC, *et al.*,** | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

On October 10, 2025, Plaintiff Wilmer Diaz initiated the above-captioned action in which he alleges violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq*., and Maryland statutory law based on the alleged failure of Defendants Sangam Ellicott City, LLC and Zeeshan Chaudhry to pay him the required minimum and overtime wage rate.[1, 2] ECF No. 1. On September 3, 2026, the Court approved the parties' proposed settlement agreement. ECF Nos. 37-2, 39. Pending before the Court is Mr. Diaz's motion for attorney's fees and costs. ECF No. 40. The motion is fully briefed and no hearing is necessary.[3] ECF Nos. 40–41; Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

Mr. Diaz alleged that Defendants employed him as a dishwasher at a restaurant in Ellicott City, Maryland, from June to August 2025. ECF No. 1 ¶ 11. He further averred that Defendants compensated him at a weekly rate of $800 for 75 hours of work, an amount that fell below

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent. ECF Nos. 22, 25, 27; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

[2] On January 6, 2026, Plaintiff Wilmer Diaz voluntarily dismissed, without prejudice, his claims against Sangam, LLC. ECF No. 18.

[3] The parties agreed that no reply would be filed. ECF No. 42.

Maryland's minimum wage and the overtime pay rate. *Id.* at ¶¶ 12–19, 30–34, 38–39, 43–44. Mr. Diaz sought $21,150 in damages, as well as attorney's fees and costs. *Id.* at ¶ 48. During a settlement conference facilitated by the Honorable J. Mark Coulson, the parties reached an agreement to resolve Mr. Diaz's claims, which the undersigned approved. ECF Nos. 33, 39. Defendants agreed to pay Mr. Diaz $7,000 "in full and final settlement of all wage claims that have been or could have been raised." ECF No. 37-2 ¶ 1. The parties also agreed to submit Mr. Diaz's claim for attorney fees to the undersigned for resolution, with such determination being "final and non-appealable." *Id.* at ¶ 3.

## II. DISCUSSION

Mr. Diaz seeks an award of $10,752.50 in attorney's fees and $840 in costs. ECF No. 40-4. Defendants do not contest the amount of costs but contend that Mr. Diaz is entitled to no more than $5,557.69 in attorney's fees. ECF No. 41 at 12.[4] The parties' arguments with respect to attorney's fees and costs are addressed in turn below.

### A. Attorney's Fees

The Court must first determine the lodestar amount, that is, the reasonable hourly rate multiplied by reasonable hours expended. *Robinson* v. *Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Reasonableness is assessed using the *Johnson* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

---

[4] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

*Barber* v. *Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors set forth in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). The Court is not required to analyze each factor individually but may consider the factors as a whole. *Martin* v. *Mecklenburg Cnty.*, 151 Fed. Appx. 275, 283 (4th Cir. 2005). Rather than seeking "auditing perfection," the goal of fee-shifting "is to do rough justice." *Fox* v. *Vice*, 563 U.S. 826, 838 (2011). Therefore, a court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* A court may not, however, solely rely on the proportionality between the damages awarded to the plaintiff and the fee requested. *Jones* v. *Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015). Ultimately, the plaintiff has the burden of demonstrating that the requested fees are reasonable. *Jones* v. *Dancel*, 792 F.3d 395, 404 (4th Cir. 2015).

Mr. Diaz seeks compensation for his attorneys and support staff as set forth below. ECF No. 40-1 ¶¶ 10–16.

**Chart 1: Requested Attorney's Fees**

| Position | Hourly Rate | Hours | Subtotal |
|---|---|---|---|
| Lead Attorney | $425 | 11.8 | $5,015.00 |
| | $450 | 11.7 | $5,265.00 |
| Managing Partner | $475 | 0.3 | $142.50 |
| Paralegal 1 | $165 | 1.3 | $214.50 |
| Paralegal 2 | $165 | 0.3 | $49.50 |
| Paralegal 3 | $165 | 0.4 | $66.00 |
| | **Total** | **25.8** | **$10,752.20** |

1. <u>Reasonable Rates</u>

In determining the reasonableness of the requested hourly rates, the Court finds *Johnson* factors five (customary fees for like work) and nine (experience and ability) most relevant. To assess reasonable rates, "[i]n addition to the attorney's own affidavits, the fee applicant must

produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [counsel] seeks an award." *Robinson*, 560 F.3d at 244 (emphasis removed) (quoting *Plyler* v. *Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Here, Mr. Diaz's lead counsel filed a sworn declaration that outlines his professional qualifications and accomplishments. ECF No. 40-1. Lead counsel argues that his hourly rate of $425 and $450 is appropriate because, based on his years of experience, his hourly rate under the Fitzpatrick Matrix referenced in Appendix B to this Court's Local Rules would be greater than $741.25.[5] *Id.* at ¶ 7; Local Rules, App. B; U.S. Dep't of Justice, *The Fitzpatrick Matrix*, https://perma.cc/99TP-3W87 (last visited Nov. 5, 2026). The Fourth Circuit has cautioned that a fee matrix—even one contained within a district court's local rules—may be considered but is not "presumptively reasonable." *De Paredes* v. *Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025). Instead, a district court "must consider all relevant evidence to determine the prevailing market rates in the relevant community, including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its own personal knowledge." *Id.* (quotation marks and citations omitted). While Defendants do not challenge the hourly rates Mr. Diaz's fee petition claims, the Court nevertheless "must independently assess the reasonableness of the amounts requested" with regards to both rates and hours. *Sankoh* v. *Gold Stret Capital Fund*, Civil Action No. PX-17-2276, 2018 WL 1709115, at *5 (D. Md. April 9, 2018).

---

[5] Mr. Diaz's lead counsel arrives at his calculation by noting the 2026 Fitzpatrick Matrix's listing of an attorney with 31 years' experience is $989 per hour and reducing that figure by 25%. ECF No. 40-1 ¶ 7. Such a reduction is in fact larger than the adjustment called for under this Court's Local Rules, which suggest a 5 to 20 percent downward adjustment "to reflect differences between the legal markets in Washington, D.C. and Maryland." Local Rules, App. B. Regardless, the undersigned takes lead counsel's point that his requested rate is significantly lower than that which may otherwise be reasonable under the Fitzpatrick Matrix. The undersigned also recognizes that a steep reduction may be required from the Fitzpatrick Matrix given that, by its own terms, it sets hourly rates for "Complex Federal Litigation."

Ultimately, the undersigned finds that the hourly rates requested for Mr. Diaz's lead counsel are reasonable. The rates are within this Court's guidelines as they incorporate the Fitzpatrick Matrix and are supported by affidavit as to lead counsel's 31 years of practice experience at the commencement of this case and his regularly charged rates for representation. ECF No. 40 at 3. Further, the rates are in line with rates this Court has previously approved for the same attorney. *E.g., Marquez* v. *India Bazaar, Inc.*, Civil Action No. AAQ-21-1775, 2023 WL 4086141 (D. Md. June 20, 2023) (approving, over three years ago, an hourly rate of $425 for the same lawyer). The undersigned also finds the requested rates for other personnel to be reasonable. The hourly rate for the managing partner, who had 16 years of practice experience at the commencement of this case, is within this Court's guidelines. ECF No. 40 at 4. It is also similar to the hourly rate this Court previously approved for him. *E.g.*, *Hernandez* v. *Villa Bldg. Grp., LLC*, ABA-23-3011, 2024 WL 3161574, at *4 (D. Md. June 25, 2024) (approving a $425 hourly rate for the same lawyer over two years ago). Finally, the rates for paralegals ($165) are nearly 40 percent and 35 percent below the Fitzpatrick Matrix paralegal/law clerk rate for 2026 ($273) and 2025 ($255), respectively. ECF No. 40 at 4. The undersigned therefore finds these rates to be reasonable.

2. <u>Reasonable Hours</u>

The next inquiry is whether the number of hours Mr. Diaz's legal team worked are reasonable. The Court finds *Johnson* factors one (time and labor), two (novelty and difficulty), and three (required skill) most relevant to this question.

The attorney has the burden to provide sufficient information in support of billing entries. *Kreuze* v. *VCA Animal Hosps., Inc.*, Civil Action No. PJM-17-1169, 2019 WL 2107263, at *7 (D. Md. May 14, 2019) (stating that courts have declined to award fees for hours where the description is ambiguous as to whether the task was clerical or legal). "[C]ounsel is not required

to record in great detail how each minute . . . was expended," so long as they identify the general subject matter of their time expenditures. *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 n.12 (1983). "[A]cross-the-board reductions are appropriate when billing records are voluminous and numerous billing entries are in dispute." *Chapman* v. *Ourisman Chevrolet Co.*, Civil Action No. AW-08-2545, 2011 WL 2651867, at *18 n.11 (D. Md. July 1, 2011) (alteration in original) (quotation marks and citation omitted).

The Court first considers the hours billed for reasonableness. *Guillen* v. *Armour Home Improvement, Inc.*, Civil Action No. DLB-19-2317, 2024 WL 1346838, at *6-7 (D. Md. Mar. 29, 2024) (stating that a court will evaluate only the "hours sought"—the number of hours worked minus non-billable tasks—to determine reasonableness for purposes of the Lodestar analysis). Mr. Diaz's lead counsel filed a spreadsheet that outlined the work he and his colleagues performed for Mr. Diaz. ECF No. 40-3. In total, Mr. Diaz's legal team seeks payment for 25.8 hours. Defendants challenge nearly half of the hours billed in this matter under various theories. ECF No. 41.

First, Defendants note that many billed tasks reflected "clerical and administrative tasks" which are non-compensable. ECF No. 41 at 4–5. The undersigned concurs. Included in the 25.8 hours Mr. Diaz's legal team billed is a variety of clerical tasks, including printing and mailing letters, filing court documents, and adding dates to attorney calendars. ECF No. 40-3 at 1. "[C]lerical, ministerial, or administrative work should not be compensated as an award for attorney's fees, no matter who performs it." *Kubas* v. *331B, LLC*, Civil Action No. EA-20-2456, 2024 WL 3487890, at *4 (D. Md. July 19, 2024) (quotation marks and citation omitted) (collecting cases). A reduction is therefore warranted on this basis.

Second, Defendants challenge billing entries by the managing partner and lead counsel for internal meetings, which total 0.4 hours. ECF Nos. 41 at 6; 40-3 at 1. As this Court has

observed previously, "internal meetings among counsel and key support staff are an integral part of developing and maintaining a litigation strategy." *Kabore* v. *Anchor Staffing, Inc.*, Civil Action No. BEL-10-3204, 2012 WL 5077636, at *6 (D. Md. Oct. 17, 2012). Where such meetings are not excessive and are related to issues in the litigation, "[t]he total fee award need not be reduced on account of time billed for internal meetings." *Id.* at *7. The undersigned will not reduce the number of hours on this basis, as the claimed 0.4 hours is not excessive and billing records reflect that the meetings were related to prosecution of this action.

Third, Defendants challenge the billing of both lead counsel and a paralegal for "translation support" during a January 30, 2026 telephone call between Mr. Diaz and his lead counsel. ECF No. 41 at 6. Defendants contend that the billing of paralegal time is "duplicative" because lead counsel's affidavit had "note[d] his Spanish fluency as a reason his representation 'reduces out of pocket costs for interpreters/translators' and as support for the reasonableness of his hourly rate." *Id.* (quoting ECF No. 40 at 8). The undersigned agrees that lead counsel cannot both rely on his Spanish language abilities as a reason the Court should accept his hourly rate while also claiming fees for translation support.

Fourth, Defendants contest the time lead counsel billed for "[c]onferring with Mr. Diaz re immigration threat from employer and process service status." ECF No. 41 at 6 (alteration in original) (quoting ECF No. 40-3 at 1). The undersigned agrees that lead counsel may not be compensated for rendering legal advice on an immigration matter that falls outside of the claims advanced in this action.

Fifth, Defendants challenge a number of billed hours as excessive in relation to the complexity of the purported task. *Id.* at 7–8. These include 3.2 hours billed by lead counsel in relation to settlement submissions and 3 hours billed for preparing the fee petition. *Id.* While the undersigned notes that the time expended on the fee petition should be reduced due to a

typographical error in the submitted spreadsheet, the remaining billed hours are compensable. ECF No. 40-3 at 3 (describing the task as consisting of two hours, but entering three in the "Hours" column). Under the first, second, and third *Johnson* factors, the Court cannot conclude that 5.2 hours constitute "an excessive amount of time to spend on" a fee petition in "a relatively straightforward wage-and-hour dispute." *Carrera* v. *EMD Sales, Inc.*, Civil Action No. JKB-17-3066, 2021 WL 3856287, at *8 (D. Md. Aug. 27, 2021).

Finally, Defendants challenge lead counsel's billing of one hour of "speculative future time." ECF No. 41 at 9. Lead counsel billed this time as an "estimate[]" for "closeout of case formalities." ECF No. 40-3 at 2. Treating such time as compensable "would require the Court to engage in a speculative analysis as to how much future work *might* be performed, which strays from the objective and concrete bases that the calculation of the lodestar figure rests on." *Wells Fargo Bank, N.A.* v. *Petrone*, Civil No. 2:22-CV-164, 2022 WL 9353510, at *4 (E.D. Va. Oct. 14, 2022) (emphasis in original); *see also Wells Fargo Bank, N.A.* v. *Gateway Int'l Logistics, Inc.*, Civil Action No. JRR-22-2487, 2023 WL 2473255, at *11 (D. Md. Mar. 13, 2023) (declining to consider counsel's future work in calculation of lodestar amount for attorney's fees). The undersigned therefore finds this time to be non-compensable.

"In reducing a claim for time spent, the court may use a percentage deduction as a practical means of trimming fat from a fee application." *Carrera*, 2021 WL 3856287, at *7-8 (quotation marks and citation omitted) (applying a global 35 percent reduction when number of hours spent was disproportionate to difficulty of the litigation); *see also Kubas*, 2024 WL 3487890, at *5 (applying a 15 percent reduction in the number of hours claimed where the billing records contained excessive entries for administrative and clerical tasks). The undersigned finds a percentage deduction appropriate here to reflect the non-compensable time contained within Mr. Diaz's fee petition. Following analysis of the facts and *Johnson* factors 1,

2, and 3, the Court will reduce the number of hours claimed by 22.5 percent. The total rate and hours adjustments are set forth below.

**Chart 2: Adjusted Attorney's Fees**

| Position | Hourly Rate | Original Hours | Adjusted Hours[6] | Adjusted Subtotal |
|---|---|---|---|---|
| Lead Attorney | $425 | 11.8 | 9.1 | $3,867.50 |
| | $450 | 11.7 | 9.1 | $4,095.00 |
| Managing Partner | $475 | 0.3 | 0.2 | $95.00 |
| Paralegal 1 | $165 | 1.3 | 1.0 | $165.00 |
| Paralegal 2 | $165 | 0.3 | 0.2 | $33.00 |
| Paralegal 3 | $165 | 0.4 | 0.3 | $49.50 |
| | **Total** | **25.8** | **19.9** | **$8,305.00** |

3. Adjustments to the Lodestar Figure

After determining the lodestar figure, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quotation marks and citations omitted). When calculating a reasonable fee award, "the most critical factor" is "the degree of success obtained." *Brodziak* v. *Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley*, 461 U.S. at 436). An award is reduced if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. The Court must also consider nonmonetary success, such as "vindicating rights and deterring future violations." *Butler* v. *Directsat USA, LLC*, Civil Action No. DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016).

[6] The adjusted hours have been rounded to the nearest tenth decimal place, which is consistent with the increments identified in the billing records supporting the requested fee award. ECF No. 40-3.

Defendants argue in favor of a reduction of the lodestar amount for two reasons. First, Defendants claim that time spent litigating on claims related to dismissed co-defendant Sangam, LLC are unrelated to the settlement against Defendants and should therefore be reduced. ECF No. 41 at 7. Second, Defendants argue that Mr. Diaz's agreement to settle this matter for $7,000 indicates that "the relief Plaintiff obtained was limited in comparison to the litigation" and therefore merits reduction. *Id.* at 10. Neither of these considerations weigh in favor of adjusting the lodestar amount. The time spent on the dismissed co-defendant is not "unrelated" to the settlement. Indeed, Defendants acknowledge that work Mr. Diaz's attorneys engaged in related to them versus the dismissed defendant "cannot be isolated." *Id.* at 7. Further, the amount of Mr. Diaz's settlement does not reflect limited success that requires a reduction of attorney's fees. While a plaintiff may likely recover less in settlement than their claimed damages, a "district court [is] not required to proportionally reduce the [attorneys' fees] award to account for this disparity." *Randolph* v. *Powercomm Constr. Inc*, 715 Fed. Appx. 227, 231 (4th Cir. 2017). Indeed, in *Randolph*, the United States Court of Appeals for the Fourth Circuit noted that it may be appropriate not to reduce a fee award where a plaintiff had settled for "38% of their claimed damages." *Id.* Here, the undersigned notes that Mr. Diaz settled for roughly a third of his total claimed damages and finds no reason to reduce the lodestar amount as a result. The Court will therefore award $8,305.00 in attorney's fees.

**B. Costs**

Costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell* v. *McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (quotation marks and citation omitted). Defendants do not dispute the $840 in claimed costs, which include process service fee and the filing fee. ECF Nos. 40-3 at 1; 41. These costs are reasonable and will be awarded in full.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that Mr. Diaz's petition for attorney's fees and costs is granted in part and denied in part. The Court will enter an award of $8,305.00 in attorney's fees and $840 in costs. A separate Order follows.

Date: November 5, 2026

/s/
Erin Aslan
United States Magistrate Judge